IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM L. TOWNSEND, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | CASE NO. 2:19-cv-251-RAH-SMD |
| CITIMORTGAGE INC., *et al.*, ) | (WO) |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter concerns an equity builder program[1] into which the Plaintiffs William L. Townsend and Bertha Townsend enrolled in 2001 when they obtained a residential loan. The Townsends claim they have dutifully made their payments under the program for 18 years, and therefore were entitled to satisfaction and release of the mortgage against their home in 2020. The Defendants, CitiMortgage, Inc., CitiFinancial Servicing LLC and CitiBank, N.A. (collectively, "Citi" or "Defendants"), claim the Townsends withdrew from the equity builder program in

---

[1] Under most equity builder or acceleration programs, instead of making a mortgage payment every month (i.e., twelve per year), the borrower makes a payment every two weeks (twenty-six times per year). The theory behind such a program is that by converting to bi-weekly payments, the debt is paid off faster because the borrower is not only making an extra monthly payment every year but is also making half of each month's payment earlier each month, thereby reducing the amount of accrued interest.

2003 and then re-enrolled in 2008, the effect of which results in the anticipated satisfaction of the mortgage in 2024.

The Townsends filed this lawsuit in 2019 when they claim to have learned for the first time that, under the equity builder program, they still had several years remaining on their loan before it was satisfied and paid off. In their Complaint, as amended, they bring claims against Citi alleging breach of contract, violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, quiet title, and requesting a declaratory judgment.[2] (Doc. 23.)

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 46) and Motion to Strike Affidavits (Doc. 56), to which the Townsends have duly responded. For the following reasons, the Court concludes that Citi's summary judgment motion is due to be granted and the motion to strike denied as moot.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if there is "no genuine issue as to any material fact and… the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also* Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," and should rely on submissions "which

---

[2] The Townsends previously agreed to voluntarily dismiss their state law claims for negligence, wantonness, and unjust enrichment and their federal claims for violations of the Truth in Lending Act and the Telephone Consumer Protection Act. (*See* Doc. 29.)

it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324. Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

## **BACKGROUND**

On June 8, 2001, the Townsends obtained a loan from Travelers Bank & Trust FSB ("Travelers") by executing a Disclosure Statement, Note and Security Agreement (the "Note"), which was secured by a mortgage ("Mortgage"). (Doc. 47-1 at 8, 10, 61-64.) Pursuant to the Note, the Townsends were required to make monthly payments of $662.98 beginning on July 13, 2001, and ending on June 13, 2031. (Doc. 47-1 at 52-56.)

The Townsends also entered into an equity builder program (the "Program") offered by the loan originator whereby the Townsends could make bi-weekly payments of $331.49 rather than a monthly mortgage payment of $662.98. (Doc. 47-1 at 13, 67-72.)  As long as the Townsends remained in the Program, the lender agreed to lower the simple rate of interest set forth in the Note by 0.25%. (Doc. 47-1 at 16, 67-72.) Also, under the Program, if the Townsends made the scheduled bi-weekly payments, the Program projected that the loan would become fully paid in June 2020, rather than July 2031. (Doc. 47-1 at 16, 67-72.)

When they entered into the Program, the Townsends were provided an amortization schedule showing how their bi-weekly payments would be applied and would result in the early satisfaction of the loan.  (Doc. 47-1 at 16-17, 67-72.) The schedule however included cautionary language stating that "any benefit of acceleration shown, assumes all payments are made via transfer from your checking account according to the S.M.A.R.T. Loan® Equity Builder payment schedule you have selected and reflects the effect of the .25% Equity Builder Interest rate discount," and that "[a]ctual savings may vary."  (Doc. 47-1 at 16, 70.)

Payment history records from Citi and the Townsends' own bank records show that the Townsends made bi-weekly payments of $331.49 from July 27, 2001, until July 8, 2003. (Doc. 47-3 at 3-5, 24-52.)  According to Citi, the Townsends contacted their loan servicer in 2003, stating that they no longer wanted to participate

4

in the Program. (Doc. 47-3 at 5.) Therefore, the Townsends' participation in the Program ceased, and they reverted back to making monthly payments of $662.98 beginning in July 2003. (Docs. 47-4; 47-5; 47-3 at 5.)

Meanwhile, on July 31, 2006, Mrs. Townsend filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Alabama. (Doc. 47-1 at 18, 73-83.) During the pendency of the bankruptcy proceeding, the Townsends executed a reaffirmation agreement and acknowledged their obligation to make monthly payments of $662.98, beginning with the next payment due on September 13, 2006. (Docs. 47-1 at 17, 52-66; 47-3 at 6, 67-77.)

According to Citi, on December 31, 2007, the Townsends re-enrolled in the Program and executed documents to that effect. (Doc. 47-3 at 6, 53-66.) Thereafter, the Townsends again began making bi-weekly payments of $331.98, beginning March 27, 2008. (Docs. 47-5; 47-3 at 6, 26-52.) The Townsends continued making these bi-weekly payments through 2019 and made a lump sum payment of $25,500 in July 2020 to satisfy and pay off the loan in full. (Docs. 47-3 at 6; 65-1.)

In the months preceding satisfaction of the loan, on or about June 19, 2018, Citi received a "Notice of Error" from the Townsends. (Doc. 47-3 at 6, 93-94.) Citi acknowledged receipt of the Townsends' correspondence, (Doc. 47-3 at 6, 93-94), and several weeks later, on July 19, 2018, responded, (Docs. 47-3 at 6, 95-114; 47-1 at 21, 94-103).

## ARGUMENT

### 1. The RESPA Claim

The Court begins its analysis with Count Six, in which the Townsends allege that Citi "violated the Real Estate Settlement Procedures Act (RESPA) by failing to acknowledge or respond to Townsends' Qualified Written Requests (QWR)." (Doc. 23 at 11.) According to the Townsends, they sent QWRs[3] on four separate occasions: July 13, 2017, May 14, 2018, November 16, 2018, and January 18, 2019. (Doc. 23 at 11.) Citi responds that it timely and appropriately responded to the only QWR that it has record of receiving; that is, the May 14, 2018, QWR that it received on June 19, 2018. As to the other QWRs, Citi argues that the Townsends' RESPA claim must fail because the Townsends have presented no evidence beyond simply stating that they sent them. These bare statements alone cannot preserve the RESPA claim at the summary judgment stage of litigation, and here, the Townsends present nothing to help their claim survive – not a copy of the QWRs they purportedly sent,

---

[3] Sometimes, the parties refer to these letters as Notices of Error. A QWR may come in the form of a Notice of Error ("NOE") or a Request for Information ("RFI"). *See Walker v. Branch Banking and Trust Co.,* 237 F.Supp.3d 1326, 1331 (S.D. Fla. 2017*)*; 12 U.S.C. § 2605(e)(1)(B); 12 C.F.R. §1024.35(a) ("A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request."); 12 C.F.R. §1024.36(a) ("A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request."). For simplicity, the Court will refer to the letters as QWRs.

not even a computer version of the files, nor any additional detail, however salient, that would support what they claim to have sent.

"When a loan servicer receives a QWR from a borrower, the loan servicer must first provide to the borrower, within five days, a written response acknowledging receipt of the QWR.… The loan servicer must then, within thirty days of receiving the QWR, send the borrower a written response explaining any corrections to the borrower's loan account, clarifying the reasons that the loan servicer believes the borrower's account is accurate, or providing the information the borrower requested." *Thomas v. US Bank Nat'l Ass'n*, No. 15-14427, 2017 WL 117121, at *5 (11th Cir. Jan. 12, 2017); *see also* 12 U.S.C. § 2605. If the servicer fails to adequately respond to a borrower's QWR in violation of RESPA, the borrower may bring a cause of action against the servicer for "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A). "[D]amages are an essential element in pleading a RESPA claim" and a "causal link" must exist "between the alleged violation and the damages." *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016).

Notably, there are restrictions on where a debtor can send a QWR. The Eleventh Circuit has recognized that, under RESPA, "[i]f a servicer designates a particular address for receiving QWRs, Regulation X requires a borrower to mail a

QWR to that address to trigger the servicer's duty to respond." *Bivins v. Bank of Am., N.A.*, 868 F.3d 915, 919 (11th Cir. 2017).

In their Amended Complaint, the Townsends allege they mailed QWRs on four distinct occasions; yet during discovery, they produced evidence of only one. And that one, while dated May 14, 2018, was actually post-marked and therefore sent on June 15, 2018. (Doc. 47-1 at 21, 94-95.) To that letter, Citi confirmed its receipt within five days on June 20, 2018 and then responded within thirty days on July 19, 2018. (Doc. 47-1 at 24, 108, 109-10.) Because both responses were timely, the Townsends have no claim concerning that particular QWR.

The question, then, is whether the Townsends can maintain a RESPA claim based on the other three letters they claim to have sent. Other than their vague and conclusory testimony, the Townsends present absolutely no evidence of the existence of these letters. Not a photocopy of the signed letters. Not a copy of, for example, the Word version of the data file for the letters. Not even proof of mailing, such as a USPS receipt. Further, even the Townsends' own testimony is specious, as they provide no detail, other than purported dates, about *where* they mailed each letter, *how* they mailed each letter, whether they pre-paid postage, or what the contents of each letter included. Indeed, their own testimony is totally lacking to support any assertion that proper QWRs were sent to Citi.

Here, the Townsends' vague, conclusory statements regarding the unaccounted for QWRs are insufficient to create a bona fide issue of material fact on their RESPA claim. *See, e.g.*, *Tonea v. Bank of America, N.A.*, 6 F.Supp.3d 1331, 1346 (N.D. Ga. 2014) (addressing plaintiff's unsupported conclusory allegation that he mailed a QWR to the defendant, and finding that the plaintiff's failure to "provide any allegations about the content of his mailing" and to "attach copies of the mailing to the complaint" is insufficient "to survive a motion to dismiss"); *Lucero v. Diversified Investments Inc.*, No. 09-cv-1742 BTM, 2010 WL 3463607, at *4 (S.D. Cal. Aug. 31, 2010) ("[B]ecause [the plaintiffs] do not allege the contents of the QWR or attach it to their Complaint, it is unclear whether Plaintiffs included enough information for the servicer to identify them, or asked for information covered by 12 U.S.C. § 2605."); *Carrillo v. Bank of New York*, No. 09–61642–CIV, 2009 WL 5708925, at *4 (S.D. Fla. Dec. 22, 2009) (Section 2605 claim failed to state a cause of action because, among other deficiencies, the complaint "does not indicate the subject matter of the written correspondence"); *Costine v. BAC Home Loans*, 946 F.Supp.2d 1224, 1232-33 (N.D. Ala. 2013) ("It is not enough to simply use the words 'qualified written request' somewhere in the Complaint. Rather, Plaintiff[ ] must plead facts demonstrating that a written request was actually made, such as by ... describing its contents showing they satisfied the requirements enumerated in 12 U.S.C. § 2605(e)(1)(B)."); *Odum v. Specialized Loan Servicing*, No. 1:15-cv-

9

001949, 2016 WL 4582070, at *4 (N.D. Ga. July 5, 2016) (finding plaintiff's RESPA claim could not survive a motion to dismiss where he failed to plead specific facts that a written request was actually made); *Saint-Felix v. Bayview Loan Servicing LLC*, No. 1:15-cv-1679, 2015 WL 13777024, at *8 (N.D. Ga. Nov. 12, 2015). *See also Konst v. Florida East Coast Ry. Co.*, 71 F.3d 850, 851 (11th Cir. 1996) (a "'presumption of receipt' arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail."). Accordingly, Citi is entitled to summary judgment on the RESPA claim.

## 2. The Breach of Contract Claim.

In Count Four, the Townsends bring a claim for breach of contract. This claim, which is somewhat confusing, appears to be premised upon the Program that Citi allegedly breached because, according to the Townsends, they "have made each and every monthly payment required of them." (Doc. 23 at 7, ¶ 32.) As the Amended Complaint alleges:

> The Plaintiffs have been on this program of bi-weekly payment automatically bank drafted for over 18 years having made each and every payment as required. Moreover, the Townsends have sent payments directly to the Defendants in addition to the auto draft payments making more than the monthly required payments. Some of these additional payments were improperly credited to the account. Some of the additional payments were improperly held in a "suspense account". Some of the payments were accepted and cashed, but the Defendants failed to apply them properly to the Plaintiffs' mortgage account in violation of the mortgage contract. In addition, Defendants improperly returned payments to the Townsends again also in violation of the mortgage contract.

10

(Doc. 23 at 7, ¶ 31.)

In a similarly vague manner, the Amended Complaint goes on to allege that Citi mishandled the escrow account, charged improper and unauthorized fees and expenses, and failed to send proper monthly statements. (Doc. 23 at 7, ¶ 29.) Presumably, these allegations too are generally tied to Citi's alleged failure to abide by the terms of the Program.

In its summary judgment motion, Citi argues that there is no evidence that it breached any provision of the loan documents or Program. It also contends that "all of the payments made by the Townsends were properly applied." (Doc. 48 at 14.) And as it concerns the Program and the payoff in 2020, it argues that the Townsends did not participate in the Program from 2003 to 2008 and therefore there could be no breach by Citi when the loan was not paid off in 2020 as projected by the amortization schedule provided to the Townsends in 2001. As evidence, Citi points to its own payment history records, the Townsends' bank records, the bankruptcy reaffirmation agreement signed by the Townsends in 2006, and the re-enrollment paperwork signed by the Townsends in 2008.

Lastly, Citi argues that the Townsends' claim is barred by the applicable statute of limitations because the Townsends exited the Program in 2003 and reenrolled in 2008. (Doc. 48 at 16.) Thus, according to Citi, the Townsends' cause of action for breach of contract would have first accrued in 2003 and would have re-

11

accrued each month thereafter until their reenrollment in 2008. Further, Citi notes the Townsends would have been on notice in 2003 through 2008 that they were no longer enrolled in the Program based on the fact that the bi-weekly payments were no longer being collected from their bank account.

In their response, the Townsends do not attempt to defend their deposition testimony or the evidence presented by Citi. Instead, they submit virtually identical affidavits that largely mimic, word-for-word, the general allegations in the Amended Complaint about failing to apply payments correctly, misapplying payments, holding payments in suspense, failing to properly credit payments, mishandling escrow, and charging unauthorized fees. (Docs. 54-1 at 2; 54-2 at 2.) In their affidavits, they also testify that they have been in the "program of bi-weekly payment automatically bank drafted for over 18 years having made each and every payment as required." (Docs. 54-1 at 2-3; 54-2 at 2-3.) They then go on to state that they "[a]re completely current on our mortgage payments, and have made each and every monthly payment required by the contract." (Docs. 54-1 at 3; 54-2 at 3.) Which they then use to support their summary judgment position that they "made all of their payments per the equity builder agreement that they signed with CitiMortgage" and "apparently, the Defendants failed to properly credit all the amounts the Townsends had made." (Doc. 54 at 11.)

Glaringly absent from the Townsends' affidavits is any degree of detail or specificity. Just like their Amended Complaint, the affidavits are full of accusations, labels, and conclusory statements, but void of specific details. Needless to say, this vagueness serves as the basis for Citi's motion to strike them.[4] (*See* Doc. 56.)

Further missing from their summary judgment response is any identification of any particular payments that were misplaced, misapplied, or not applied at all. Instead, the Townsends simply make a broad swipe of saying they made all of their bi-weekly payments dating back to 2001, just as they did in their affidavits.

While the Court is highly concerned about the lack of detail and evidence presented by the Townsends, *see Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991*)* (holding that a party cannot satisfy its burden at summary judgment by relying on legal conclusions or conclusory allegations), the Court concludes that it need not entangle itself with comparing Citi's evidence against the Townsends' specious, vague and largely self-serving statements because the Townsends' breach of contract claim is time-barred. In Alabama, the statute of limitations for contract claims is six years. Ala. Code § 6-2-34(9). *See also McCall v. Household Finance Corp.*, 122 So. 3d 832, 835 (Ala. 2013); *Yeager v. Ocwen Loan Servicing LLC*, No. 1:17-cv-

---

[4] Since the Court is granting summary judgment for reasons apart from what is or is not contained in the affidavits, the Court denies the motion to strike as moot. However, the Court notes that the motion correctly characterizes the affidavits as speculative and conclusory, and in other contexts, contradictory of their own testimony.

13

574-WKW, 2018 WL 1004742, at *6 (M.D. Ala. Feb. 21, 2018). It begins to run "from the time a breach occurs rather than from the time actual damage is sustained." *AC, Inc. v. Baker*, 622 So. 2d 331, 335 (Ala. 1993).

The Townsends' Amended Complaint and summary judgment argument repeatedly assert that, for the entire duration of the loan and beginning in 2001, they were enrolled in and were making bi-weekly payments and that Citi failed to apply their payments as required under that Program. Because Citi did not apply their payments as contractually required, the theory goes, the principal balance of the loan did not decrease as quickly as they expected and as represented in the amortization schedule. The evidence presented by Citi, including the Townsends' own bank records, shows that the Townsends were not enrolled in the Program from 2003 to 2008 and therefore the breach, if any, occurred in that time frame. The statute began to run at that time, thereby resulting in the expiration of the six-year statute of limitations years before the date the Complaint was filed in 2019.

Although the Townsends did not benefit the Court with any written legal argument concerning the statute of limitation issue, during oral argument, they argued that the limitations period did not begin to run until 2020 when the loan failed to mature as expected. The extended maturity (2024 instead of 2020), however, would be an element of damage and does not extend the time for filing a complaint for a precedent breach. *See McCall v. Household Finance Corp.*, 122 So. 3d 832,

835 (Ala. 2013)(concluding the breach occurred when the lender failed to apply payments and not years later when the loan did not pay off as expected); *Stephens v. Creel*, 429 So. 2d 278 (Ala. 1983) (the statute of limitations for breach of contract begins to run when the breach occurs even if it precedes any actual damage). In actuality, the Townsends' first damage occurred in 2003 during the first month that a payment was not applied consistent with the Program.

And finally, unlike a fraud claim, there is no discovery rule for breach of contract claims under Alabama law. *See McCullough Enterprises LLC v. Marvin Windows & Doors*, No. 09–0573–WS–B, 2010 WL 5014670 (S.D. Ala. Dec. 2, 2010). Thus, it is irrelevant whether the Townsends had actual notice that Citi was not withdrawing bi-weekly payments or applying payments consistent with the Program from 2003 to 2008.

In short, Citi is entitled to summary judgment on the Townsends' breach of contract claim because the claim is time-barred.

### 3. The Quiet Title and Declaratory Judgment Claims

Counts Eight (Quiet Title) and Nine (Declaratory Relief) are tied together by the same common allegation. That is, both counts seek a determination that the Note is paid in full and therefore that the Mortgage should be treated and considered as satisfied. (*See* Doc. 23 at 14-15.) Presumably, both counts were originally filed as tag-along claims to the Townsends' breach of contract claim relating to the equity

builder program because, at that time, there was an outstanding balance associated with the loan. Since that time, however, the Townsends have paid off and satisfied the loan in full through a lump sum payment made in July 2020, a point acknowledged by the parties in this case. (Docs. 65-1; 72.) There being no further debt and therefore no corresponding mortgage premised on an outstanding debt, there is no longer a justiciable claim regarding a mortgage (or cloud) against the property. *See, e.g., Snyder v. U.S.*, 260 F. App'x 488 (3rd Cir. 2008)(affirming summary judgment on quiet title claim because the claim was moot in light of the IRS's release of the tax lien); *Obonyano v. Aderibigbe*, No. 1:07-cv-1854-ODE, 2009 WL 10672142, a *3 (N.D. Ga. Feb. 10, 2009) (recognizing that quiet title claim was moot since lien had been canceled).[5]  Therefore, these claims are due to be dismissed without prejudice.

## CONCLUSION

For all of the foregoing reasons, it be and is hereby ORDERED as follows:

(1) Summary Judgment (Doc. 46) is GRANTED as to Counts Four and Six of the Amended Complaint, and therefore these counts are dismissed, with prejudice;

---

[5] To the extent the Townsends seek a declaratory judgment concerning the servicing of the loan, such a claim is simply redundant and duplicative of their breach of contract claim, which as the Court has already concluded, is time-barred as a matter of law. Moreover, declaratory judgment is not a substantive claim for relief, but instead a remedy. *See Griffin v. Lee County Bd. Of Educ.*, No. 3:16-cv-67, 2019 WL 1338896 (M.D. Ala. Mar. 25, 2019) (citing cases).

(2) Summary Judgment (Doc. 46) is GRANTED as to Counts Eight and Nine of the Amended Complaint, and therefore these counts are dismissed, without prejudice;

(3) Counts One, Two, Three, Five, and Seven of the Amended Complaint are dismissed, without prejudice, upon agreement (Doc. 29) of the parties;

(4) The Defendants' motion to strike (Doc. 56) is DENIED, as moot;

A separate judgment will enter.

DONE, this 6th day of January, 2021.

                                        /s/ R. Austin Huffaker, Jr.
                                R. AUSTIN HUFFAKER, JR.
                                UNITED STATES DISTRICT JUDGE